NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JANICE MARRIN.

          Plaintiff,

v.

CAPITAL HEALTH SYSTEMS, INC.,
et al.

          Defendant(s).

---

Civil Action No. 14-2558 (FLW)(LHG)

**OPINION**

**WOLFSON**, **United States District Judge**:

      This case arises out of a twelve-Count Second Amended Complaint filed by Janice Marrin ("Plaintiff") against Capital Health Systems, Inc.[1] ("Capital Health"), Joan Duvall ("Duvall"), and Carolann Bass ("Bass") (collectively "Defendants"). Marrin, in essence, asserts that she was fired from her position with Capital Health Systems without cause, in retaliation for reporting on improper procedures, and as a result of a disability, fibromyalgia. The Complaint asserts: (Count 1) Conscientious[2] Employee Protection Act; (Count 2) Family Medical Leave Act; (Count 3) tortious inference with economic advantage; (Count 4); tortious interference with contractual relations; (Count 5) Law Against Discrimination—Retaliation; (Count 6) Law Against Discrimination—Disability Discrimination; (Count 7) Breach of the Employees

---

[1] The Corporate Defendant is listed on the Amended Complaint as "Capital Health Systems, Inc., d/b/ Capital Health, d/b/a Capital Health – Hamilton, Capital Health Regional Medical Center, Capital Health – Hopewell." As noted by Defendants, Capital Health Systems, Inc. is the only one of those names which is a legal entity in New Jersey. Def. Br. at 4; Def. Ex. A. The Complaint should be amended to reflect the proper party.

[2] Plead as "Consciousness Employee Protection Act."

1

Handbook (contract and tort); (Count 8) Covenant of Good Faith and Fair Dealing; (Count 9) Negligent Misrepresentation; (Count 10) Civil Conspiracy; (Count 11) Punitive Damages; (Count 12) Attorney Fees and Litigation Expenses.

Defendants filed a Motion to Dismiss Counts 3, 4, 6, 7, 8, 9, 10, 11 and 12. In addition to opposing the Motion, Plaintiff filed a Motion for Leave to file a Third Amended Complaint. For the reasons set for below, Defendants' Motion is granted in part and denied in part. Specifically, Defendants' Motion to Dismiss Counts 3 (tortious interference with economic advantage) and 4 (tortious interference with contractual relations); Counts 7 (breach of employee handbook) and 8 (breach of covenant of good faith and fair dealing); Count 9 (negligent misrepresentation); Count 10 (civil conspiracy); and Counts 11 (punitive damage) and 12 (attorney fees) are granted. Plaintiff's Motion to Amend the Complaint is denied with respect to Counts 3, 4, 7, 8, 9, 10, 11, and 12. Plaintiff's Motion to Amend the Complaint is granted with regard to Count 6 (Law Against Discrimination—disability discrimination) and Defendants' Motion to Dismiss Count 6 of the Second Amended Complaint is denied as moot.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The facts described here come from Plaintiff's Second Amended Complaint, and documents which are integral to the Complaint, and are assumed to be true for the purpose of these motions. Plaintiff was a laboratory technician in the Microbiology Laboratory Department of Capital Health. 2d Am. Compl. at ¶ 1-4.[3] Bass was the supervisor of the Microbiology Laboratory Department, and Plaintiff's direct supervisor; Duvall was the supervisor of the

---

[3] As the numbering of the paragraphs in the Complaint restarts for each Count, the citations are labeled by the Count, and the paragraph number within the Count.

Laboratory Department. *Id.* at ¶ 1-2 to 1-4. According to the Complaint, Plaintiff complained to Duvall and Bass, as well as other supervisors, that "employees were not following proper procedure in the Microbiology Laboratory Department." *Id.* at ¶ 1-6. Plaintiff asserts that she was terminated in retaliation for reporting these procedures to her supervisors. *Id.* at ¶1-10.

Plaintiff further asserts she suffers from "fibromyalgia syndrome." *Id.* at ¶ 5-2. She states that she made a request for intermittent leave to accommodate her fibromyalgia, which was approved. *Id.* at ¶¶ 2-2; 6-9. However, Plaintiff alleges that "Defendants deliberately created intolerable working conditions, interfered with Plaintiff's leave, and terminated the Plaintiff under the guise of their progressive discipline program." *Id.* at ¶ 2-6. Plaintiff further asserts that her disability "was a determinative factor in the Defendant's decision to intentionally provide the Plaintiff with unwarranted progressive discipline to justify her termination." *Id.* at ¶ 5-3. According to Plaintiff, Defendants did not engage her in any interactive process, and failed to reasonably accommodate her disability. *Id.* at ¶ 6-3. Additionally, Plaintiff states that on February 4, 2013, and February 6, 2014[4], Defendants failed to advise her of the proper procedure to call in sick. *Id.* at ¶ 9-2.

Capital Health has a written manual, which sets forth their policies and procedures,, including a progressive discipline policy. *Id.* at ¶ 7-2. Plaintiff alleges that this manual "created a contract between the Plaintiff and the Defendant Capital Health." *Id.* at ¶ 7-3. Plaintiff further alleges that the Defendants did not comply with the terms and conditions of the written manual; namely by disciplining Plaintiff improperly and terminating her.[5] *Id.* at ¶¶ 7-5 to 7-6. Plaintiff

---

[4] Plaintiff's opposition brief to the Motion to Dismiss states that Plaintiff was disciplined for failure to follow the call-out procedure on February 12, 2013, which suggests that the 2014 date given in the Amended Complaint is incorrect.

[5] The Second Amended Complaint does not give the date of Plaintiff's termination.

3

additionally states that Defendants negligently carried out the policies in the handbook. *Id.* at ¶ 7-8.

Plaintiff asserts that Duvall and Bass acted in concert and outside the scope of their employment to terminate her. *Id.* at ¶ 10-2.

On March 20, 2014, Plaintiff filed an Amended Complaint[6] in the Superior Court of New Jersey, Law Division of Mercer County, against all Defendants. Defendants removed the case to this Court on April 22, 2014, and filed a partial Motion to Dismiss on May 9, 2014. Plaintiff filed a Second Amended Complaint on May 18, 2014, and an opposition to the Motion to Dismiss on May 19, 2014.The Court, in response to a letter from Defendants, terminated the initial Motion to Dismiss as moot. On June 2, 2014, Defendants filed the present Motion to Dismiss. In addition to filing an Opposition to the Motion to Dismiss, Plaintiff filed a Cross-Motion to Amend the Complaint, attaching a proposed Third Amended Complaint.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not

---

[6] The papers do not indicate when the initial Complaint was filed.

require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149–50 n. 3 (1984) (quotation and citation omitted). A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *Bell Atlantic v. Twombly*, 550 U.S. 544, 583 (2007) (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for all civil actions.") (internal citations omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly.*").

Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler,* 578 F.3d at 210. Second, a district court must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* A complaint must do more than allege the plaintiff's entitlement to relief. *Id.* However, this standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 127 U.S. at 1965); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim . . . . The pleading standard is not akin to a probability requirement, . . . to

5

survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)). Nonetheless, a court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir. 1997). The defendant bears the burden of showing that no claim has been presented. *Hedges v. U.S.*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.[7] *Southern Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). To the extent that the documents relied on by the Complaint contradict the factual allegations alleged in the complaint, the documents will control. *Goldenberg v. Indel, Inc.* 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (citing *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 n.8 (3d Cir.1994)).

**B. Motion to Amend Complaint**

Under Fed. R. Civ. Proc. 15(a), a party may amend her pleading once as a matter of course. Therefore, before amending again, the party must obtain either leave of the court or

---

[7] Plaintiff has attached various documents to its Opposition to the Motion to Dismiss, including, *inter alia*, a proposed Third Amended Complaint (Ex. 3), a certification from Plaintiff alleging specific facts relevant to the Complaint (Ex. 1) and disciplinary action notices relating to Plaintiff (Ex. 4). While the proposed Third Amended Complaint will be used to evaluate Plaintiff's Motion to Amend, the remaining exhibits have not been attached to any pleadings. To the extent that the Complaint refers to the disciplinary action notices, they may be considered; the remaining documents, however, are outside the record for both the Motion to Dismiss and the Motion to Amend.

written consent from the opposing party; the court is instructed to "freely give leave when justice so requires." *Id.* When considering a motion to amend, "[t]he Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.' " *Shane v. Fouver*, 213 F.3d 113, 115 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Nonetheless, a court may deny a plaintiff leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, prejudice and futility. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Under Third Circuit precedent, a "futile" amendment is one that fails to state a claim upon which relief could be granted. *Burlington*, 114 F.3d at 1434; *Grayson v. Mayview* State Hospital, 293 F.3d 103, 113 (3d Cir. 2002). Thus, in determining whether a complaint, as amended, is futile, the District Court must apply the sufficiency standard set forth under Rule 12(b)(6). *Shane*, 213 F.3d at 115. "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency." *Id.*

**III. DISCUSSION**

    **A. Breach of Contract and Breach of Good Faith and Fair Dealing**

Defendants assert that the Employee Handbook did not create a contract between Capital Health and Plaintiff, because the Handbook specifically states in multiple locations that it does not create such a contract. Def. Br. at 6–7. Because Plaintiff cannot point to an enforceable

contract, Defendants argue that both the breach of contract claim (Count 7) and the breach of the covenant of good faith and fair dealing claim (Count 8) must be dismissed.

Plaintiff alleges that while she signed a Handbook Acknowledgment Page for an Employee Handbook in 2005, Capital Health issued a new Handbook in 2010. Pl. Br. at 7–8. Plaintiff contends that she was not "reoriented" to the disclaimer provisions in the 2010 Handbook. *Id.* at 8. Plaintiff further argues that the disclaimers in the Handbook are not valid because they are not bold-faced, underlined, or otherwise set apart from the rest of the text. Pl. Br. at 8.

An employment manual which provides terms and conditions of employment, including grounds and procedures for dismissal, may create an employment contract; however, the manual must contain "some provision or language in the employment manual that guarantees the employee will not be terminated except for good cause." *Doll v. Port Auth. Trans-Hudson Corp.*, 92 F. Supp. 2d 416, 422–23 (D.N.J. 2000) *aff'd*, 261 F.3d 491 (3d Cir. 2001) (citing *Woolley v. Hoffmann-LaRoche, Inc.*, 99 N.J. 284 (1985)). "Moreover, the *Woolley* decision permits an employer to negate an implied contract by the inclusion of a clear and prominent disclaimer in the employment manual." *Id.* at 423. However, "[d]isclaimers in employee manuals fail for lack of prominence when the text is not set off in such a way as to bring the disclaimer to the attention of the reader." *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 415, 643 A.2d 554, 561 (1994). *See also Clarke v. Essex Valley Health Care, Inc.*, No. A-3876-12T3, 2014 WL 4843972, at *6 (N.J. Super. Ct. App. Div. Oct. 1, 2014) (holding that the multiple disclaimers in a handbook , which were on the first and last page of the handbook, with bolded titles, "more than satisfy the requirements of *Woolley*.").

8

Although Plaintiff asserts that she was not "reoriented" as to the 2010 Handbook, the document attached as Exhibit A to the Second Amended Complaint contains pages from that Handbook; the previous Handbook was not attached to or referred to by the Second Amended Complaint. Thus, Plaintiff is relying on the 2010 Handbook to make the claim that she had a contract. The 2010 Handbook[8] states:

> No one is authorized to provide you with an employment contract or special arrangement concerning terms or conditions of employment unless the contract or arrangement is in writing and signed by the Chief Executive Officer or designee. You or Capital Health may terminate your employment with Capital Health at any time, with or without cause or notice.
>
> [Def. Br. Ex. B. at iii.]

This statement is in bold font, on its own page, at the beginning of the handbook. Similarly, the final page of the Handbook is a "Receipt of Handbook" acknowledgment, which states, in all capital letters "I recognize that neither the Handbook nor any other communication, either written or oral . . . is intended to create an employment contract."[9] *Id.* These warnings are therefore adequately set off to bring them to the attention of the reader. Plaintiff has cited no law whatsoever to support her assertion that an employer is required to "reorient" an employee to disclaimers contained in an employee handbook when a new version is issued. Indeed, Plaintiff does not allege that the 2005 Handbook did not include similar disclaimer language, further making it clear that no "reorientation" was necessary. As a matter of law, the Employee

---

[8] Because these claims are expressly based on the Employment Handbook, I may properly consider the document attached to Defendants' Brief, which Plaintiff concedes is applicable. Pl. Br. at 8.

[9] Defendants attached a "Receipt of Handbook" page, signed by Plaintiff in 2005. Def. Ex. C. I note that the 2005 and 2010 "Receipt of Handbook" pages are identical, and both state that the handbook does not create an employment contract.

Handbook did not create an enforceable employment contract. Count 7, for breach of contract, is therefore dismissed.[10]

Defendants further argue that there is no implied covenant of good faith and fair dealing in an employment context unless an employment contract exists. Def. Br. at 9. Plaintiff argues, however, that even in the absence of an employment contract, where there is a disciplinary policy given to employees, there is still an enforceable commitment that the company will endeavor to avoid termination. Pl. Opp. at 11 (quoting *Geldreich v. American Cyanamid Co.*, 299 N.J. Super. 478, 486 (App. Div. 1997)).

In general, there is no covenant of good faith and fair dealing between an employer and an "at-will" employee. *Varallo v. Hammond, Inc.*, 94 F.3d 842, 848 (3d. Cir. 1996); *see also Clarke*, No. A-3876-12T3, 2014 WL 4843972, at *6 (holding that where there is no actual or implied contract, there is no implied covenant of good faith and fair dealing). However, "'[t]his does not mean that an implied obligation of good faith is inapplicable to those aspects of the employer-employee relationship which are governed by some contractual terms, regardless [of] whether that relationship is characterized generally as being at will.'" *Peck v. Imedia, Inc.*, 293 N.J. Super. 151, 168 (App. Div. 1996) (quoting *Nolan v. Control Data Corp.*, 243 N.J. Super. 420, 429 (App. Div. 1990)). In *Peck*, for example, an at-will employee had a cause of action based on the breach of good faith and fair dealing "attributable to any delay in expressing the

---

[10] Count 7 additionally asserts a claim in tort, stating that "Defendants were also negligent in carrying out the policies in the handbook by terminating the Plaintiff even though the Plaintiff cooperated with an investigation." Am. Compl. at ¶7-8. The initial inquiry in any negligence action is whether the defendant has breached a duty owed to the plaintiff, which if observed, would have averted plaintiff's injuries. *Kulas v. Public Service Electric and Gas Co.*, 41 N.J. 311, 316 (1964). In the absence of an enforceable contract, Plaintiff cannot show that Defendants owed her any duty to carry out the policies in the handbook, and cannot therefore maintain a claim in tort.

decision to terminate the relationship." *Id.* Similarly, in *Geldreich*, the New Jersey Appellate Division found an "enforceable commitment" where an employee manual contained "unqualified requirements" for employee termination, and there was a "separate generalized disclaimer" which "[fell] short of passing muster under *Woolley*." 299 N.J. Super. at 486.

These cases, however, are not applicable here. First, the claim here is directly related to Plaintiff's status as an at-will employee. In addition, while there is a more generalized disclaimer at the beginning of the document, the section of the Employee Handbook describing the Progressive Discipline System has a specific disclaimer:

> Capital Health, however, retains the authority to skip any of the steps set forth below in order to accelerate the disciplinary process or to immediately discharge you without following any of the steps set forth below based on the severity of the offense. The establishment of the Progressive Discipline System in no way abrogates the at-will aspects of your employment.
>
> [Def. Br. Ex. B. at 16.]

The same section states "Listed below are the steps *typically* followed in the Progressive Discipline System." *Id.* (emphasis added). The Handbook's language therefore ensures that an employee cannot reasonably treat it as a contract. Without any indication of an enforceable commitment, Plaintiff cannot claim that any covenant of good faith and fair dealing applied to her. Count 8, for breach of the covenant of good faith and fair dealing, is thus dismissed.

Plaintiff's proposed Third Amended Complaint does not, in fact, amend these Counts in any way. The Motion to Amend Counts 7 and 8 of the Complaint is therefore denied as futile.

### B. Tortious Interference

Defendants assert that both Counts 3 (tortious interference with economic advantage) and 4 (tortious interference with contractual relations) must be dismissed. First, Defendants state that Plaintiff did not have a contract with Capital Health, Def. Br. at 10 and this Court has so found.

11

Defendants further note that, as the claims are made against all Defendants, it is illogical to assert that Capital Health interfered with its own contract or economic relationship with Plaintiff. *Id.* at 11. Finally, Defendants argue that the Complaint itself shows that the individual Defendants were acting within the scope of their employment by disciplining Plaintiff. *Id.* at 11. Plaintiff argues that the law in New Jersey is unclear as to whether actions by an employee (the individual Defendants) can constitute tortious interference with a relationship between an employer and a third party (the plaintiff). Pl. Br. at 13. Plaintiff further asserts that the individual Defendants were acting outside the scope of their employment. *Id.* at 14–15.

As Plaintiff had no employment contract with Capital Health, Plaintiff cannot maintain a claim of tortious interference with contractual relations by any of the named Defendants. Any amendment to this claim, in the absence of evidence of an enforceable contract, would be futile. Count 4 is therefore dismissed.

Plaintiff likewise cannot maintain a claim of tortious interference with economic advantage against Capital Health. "It is fundamental to a cause of action for tortious interference with a prospective economic relationship[11] that the claim be directed against defendants who are not parties to the relationship." *Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 752 (1989). Plaintiff is asserting an interference with her relationship with Capital Health; Capital Health cannot tortiously interfere with its own relationship. Thus, Count 3 is dismissed as to Capital Health.

---

[11] The New Jersey Courts use the claims "tortious interference with economic advantage," "tortious interference with prospective economic relationship" and "tortious interference with prospective business relations" interchangeably. *See, e.g.*, *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305, 770 A.2d 1158, 1170 (2001) (defining claim for "tortious inference with economic advantage" as "tortious interference with a prospective business relation," (citing *Printing Mart-Morristown*.))

While the law is clear that no tortious interference with an employment relation can be asserted against an employer, the law is more complex regarding tortious interference claims against fellow employees. The New Jersey Supreme Court in *Printing Mart-Morristown* expressly declined to resolve this question. *Id.* at 763. However, the courts of this Circuit have held that "only when an employee asserts that a supervisor was acting outside the scope of his employment and/or for his own personal gain may the employee go forward with a claim for tortious interference." *Marrero v. Camden Cnty. Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 478 (D.N.J. 2001) (internal quotation marks and citation omitted); *see also Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir. 2001). New Jersey state courts have held the same way. *See Clarke*, No. A-3876-12T3, 2014 WL 4843972, at *7 (holding that supervisors "were not strangers to [the plaintiff's] employment relationship and, consequently, cannot be said to have tortiously interfered with it.").

The Amended Complaint states in vague terms that "Defendant's actions . . . were outside the scope of their employment and not for the good of their corporate Defendant employer, Capital Health Systems." ¶ 3-8. Ordinarily, supervisors who discipline employees are acting within the scope of their employment, even if they act with an improper motive. *Marrero*, 164 F. Supp. 2d at 478. Moreover, without descriptions of specific actions by Defendants Bass and Duvall, the claim for tortious interference must be dismissed under the pleading requirements of *Iqbal*.

Plaintiff's proposed Third Amended Complaint asserts that "Defendants harassed the Plaintiff to disclose to them who provided to her confidential emails that were provided to the Human Resources Department," and that "Defendants terminated the Plaintiff for failing to disclose to them who provided her confidential emails." 3d Am. Compl. at ¶¶ 3-9, 3-10. This

13

amendment to the Complaint, however, still fails to provide sufficient facts to "raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (3d Cir. 2008) (internal quotation marks omitted). Indeed, Plaintiff's Exhibit 4 shows that Duvall and Bass were acting in accordance with an internal investigation. The fact that the individual Defendants terminated Plaintiff for failing to cooperate with an internal investigation, does not place their conduct outside of the scope of their employment.

Thus, Defendants' Motion to Dismiss Counts 3 and 4 is granted as to all Defendants. Plaintiff's Motion to Amend is denied.

### C. Law Against Discrimination: Failure to Accommodate

Defendants argue that Count 6, Law Against Discrimination—Disability Discrimination, must be dismissed because Plaintiff merely recites legal conclusions rather than facts. Def. Br. at 13. Defendants further assert that Plaintiff has acknowledged that her request for an accommodation was granted. *Id.* at 14. Plaintiff, in response, requests leave to amend the complaint to clarify that "Plaintiff could not comply with the alleged sick leave policy," which required Plaintiff to "speak to a supervisor or tech-in-charge," rather than leave a voicemail message. Pl. Br. at 18. Defendants respond that Plaintiff does not specify in the proposed 2nd Amended Complaint why she could not call back later if a supervisor was not available. Def. Repl. At 20.

A complaint for failure to accommodate under the New Jersey Law Against Discrimination has four elements: "(1) [plaintiff] was disabled and his employer knew it; (2) [plaintiff] requested an accommodation or assistance; (3) [plaintiff's] employer did not make a good faith effort to assist; and (4) [plaintiff] could have been reasonably accommodated." *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006). Plaintiff's

proposed Third Amended Complaint alleges that while Plaintiff was "granted an accommodation . . . for intermittent leave," 3d Am. Comp. at ¶ 6-9, "Plaintiff was not provided an accommodation in connection with the call-in procedure"; that under the new policy, "Plaintiff was required to speak to a supervisor or tech-in-charge and not permitted to leave a message"; that "To the extent that there is no supervisor or tech-in-charge available to speak to, the Plaintiff is forced to appear for work, sick, and in violation of the family medical leave act"; and finally that "Defendants' failure to accommodate the Plaintiff by providing her alternative telephone numbers or allowing her to leave a message was a violation of the family medical leave act," *id*. at ¶¶ 6-14 to 6-17.

Plaintiff's proposed Amended Complaint sufficiently alleges a claim under the Law Against Discrimination. The Complaint alleges that Plaintiff had a disability, fibromyalgia syndrome, 3d Am. Compl at ¶ 6-2; that her employer did not make a reasonable accommodation, *id.* at ¶ 6-17; and that a reasonable accommodation, namely being given an alternate phone number, was available, *id.* Although Plaintiff does not specifically state that she requested alternative phone numbers or permission to leave a voicemail, the facts as stated in the proposed Amended Complaint are sufficient for the court to infer that such a request was made. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). Defendants' assertion that an alternative phone number is not a reasonable accommodation, Def. Repl. at 20, is a legal conclusion, and requires facts outside the pleadings to establish.

Thus, Plaintiff's Motion to Amend the Complaint as to Count 6, Law Against Discrimination—Disability Discrimination, is granted. Defendants' Motion to Dismiss Count 6 is denied as moot.

**D. Negligent Misrepresentation**

Defendants argue that Plaintiff has failed to provide sufficient facts to adequately state a claim for negligent misrepresentation. Def. Br. at 14–15. Plaintiff asserts that in 2005, she was told the procedure for calling out sick; that she was disciplined for failing to follow a new procedure in 2013; and that she was never told of the new procedure. Pl. Br. at 20–21. In response, Defendants note that Plaintiff has not attached either the old or new call-out policies, nor abided by the heightened pleading standard for fraud required by Fed. R. Civ. Proc. 9(b). Def. Repl. at 22.[12]

To state a claim for negligent misrepresentation, Plaintiff must allege that "defendant negligently provided false information and that plaintiff incurred damages proximately caused by its reliance on that information." *Highlands Ins. Co. v. Hobbs Grp.*, LLC., 373 F.3d 347, 351 (3d Cir. 2004). In addition, the New Jersey Supreme Court has recognized a cause for negligent misrepresentation where a party fails to provide information which it has a duty to disclose. *Karu v. Feldman*, 119 N.J. 135, 148 (1990). Although Defendants assert that the heightened pleading requirements of Rule 9(b) apply to claims of negligent misrepresentation, this is only true where the claim "sounds in fraud." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 272–73 (3d

---

[12] Defendants also assert in their reply that "Plaintiff cannot demonstrate the fourth element . . . . that Defendants' supposedly false statements caused her harm." Repl. Br. at 23. Because this argument was first raised in the reply brief, the Court will not consider it. "A moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief." *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 533 n.3 (D.N.J. 1999) (citing *International Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n.11 (3d Cir. 1992) (refusing to consider an issue raised for the first time in a reply brief)).

Cir. 2006) ("where the claims are expressly premised on negligence rather than fraud, Rule 9(b) has been held inapplicable"); *see also Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2012 WL 869007, at *5 (D.N.J. Mar. 14, 2012) ("because Plaintiffs' negligent misrepresentation claim is specifically alleged as a separate claim [from the fraud claims], it is not subject to Rule 9(b)'s heightened pleading requirements, notwithstanding the significant overlap in allegations between the claims."); *Rawson Food Servs., Inc. v. TD Bank, N.A.*, No. 13-3084, 2014 WL 809210, at *5 (D.N.J. Feb. 28, 2014) ("Rule 9(b) does not apply to a freestanding negligence claim"). Thus, the ordinary pleading standards of Rule 8 apply here.

Plaintiff's opposition to the Motion to Dismiss relies almost entirely on facts outside the record, namely a certification from Plaintiff. *See* Pl. Br. at 20–21. Plaintiff's factual allegations in the Second Amended Complaint are limited to an assertion that Defendants "fail[ed] to advise her of the proper procedure to call in sick," 2d. Am. Compl. at ¶ 9-2, and that as a result of this failure "Plaintiff suffered damages." *Id.* at ¶ 9-3. Even under the lenient standards of Rule 8, these allegations do not contain sufficient factual content for "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rather, the allegations are merely "naked assertions devoid of further factual enhancement." *Id.* The proposed Third Amended Complaint makes no changes to this section.

Thus, on Count 9, negligent misrepresentation, Plaintiff's Motion to Amend is denied, and Defendants' Motion to Dismiss is granted.

### E. Civil Conspiracy

Defendants assert that Count 10, civil conspiracy, must be dismissed. First, Plaintiff argues that "the fact that two supervisors issued written disciplinary notices for improper behavior . . . hardly qualifies as a conspiracy." Def. Br. at 17. Second, Defendants notes that

17

individual Defendants cannot conspire with their employer. *Id.* Plaintiff asserts that the Defendants acted together to commit an unlawful act, namely by terminating Plaintiff so they would not have to provide her with intermittent medical leave. Pl. Br. at 21.

To state a claim for civil conspiracy, a plaintiff must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (quoting *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993)). However, in New Jersey, it is well settled that a "corporation which acts through authorized agents and employees . . . cannot conspire with itself." *Sun Pharm. Indus., Inc. v. Core Tech Solutions, Inc.*, A–0646–11T4, 2013 WL 1942619 (N.J. Super. Ct. App. Div. May 13, 2013) (quoting *Tynan v. Gen. Motors Corp.*, 248 N.J. Super. 654, 668 (App.Div.1991), *rev'd in part on other grounds*, 127 N.J. 269 (1992)); *see Johnson v. Baker*, 445 F.2d 424, 427 (3d Cir. 1974) ("a corporation cannot conspire with itself anymore than a private individual can, and it is the general rule that the acts of the agents are the acts of the corporation."); *see also Sunkett v. Misci*, 183 F.Supp.2d 691, 722 (D.N.J .2002) ("When the officers of a corporation are acting in their corporate capacity, they cannot conspire with the corporation alone.").

Because it is undisputed that the individual Defendants were employees of Capital Health, no claim for conspiracy between the individual Defendants and Capital Health can be stated. Furthermore, as discussed in the claim for tortious interference, *supra*, Plaintiff has failed to state facts that show that the individual Defendants were acting outside the scope of their

18

employment. Thus, all parties were acting within their "corporate capacity," and the claim of civil conspiracy, Count 10, is dismissed.

Plaintiff's proposed amendments to the civil conspiracy count are identical to Plaintiff's proposed amendments to the tortious interference claims; namely that "Defendants harassed the Plaintiff to disclose to them who provided to her confidential emails that were provided to the Human Resources Department," and that "Defendants terminated the Plaintiff for failing to disclose to them who provided her confidential emails."3d. Am. Compl. at ¶¶ 10-10, 10-11. For the same reasons that were discussed in that section, *supra*, these amendments do not suffice to show that the individual Defendants were acting outside the scope of their employment. Plaintiff's Motion to Amend Count 10 is therefore denied.

### F. Punitive Damages and Attorney Fees

Defendants argue that Counts 11, punitive damages, and 12, attorney fees and litigation expenses, should be dismissed because they are forms of relief and not separate causes of action. Def. Br. at 19. I agree that punitive damages, attorney fees, and litigation expenses, are remedies for certain causes of action, and not substantive counts in their own rights. *See Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000). Counts 11 and 12 are therefore dismissed. The Court does not comment as to whether these remedies are permissible under any of the substantive causes of actions asserted in the Complaint.

## IV. CONCLUSION

Fore the reasons set forth above, Defendants' Motion to Dismiss is granted in part and Denied in part; Plaintiff's Motion to Amend the Complaint is similarly granted in part and denied in part. Specifically, Defendants' Motion to Dismiss Counts 3 (tortious interference with

economic advantage) and 4 (tortious interference with contractual relations); Counts 7 (breach of employee handbook) and 8 (breach of covenant of good faith and fair dealing); Count 9 (negligent misrepresentation); Count 10 (civil conspiracy); and Counts 11 (punitive damage) and 12 (attorney fees) are granted. Plaintiff's Motion to Amend Complaint are denied with respect to Counts 3, 4, 7, 8, 9, 10, 11, and 12. Plaintiff's Motion to Amend the Complaint is granted with regard to Counts 6 (Law Against Discrimination—disability discrimination) and Defendants' Motion to Dismiss Count 6 is denied as moot. In addition, the Complaint should be amended to reflect that the proper corporate Defendant is Capital Health Systems, Inc. An appropriate Order shall follow.

Date:   Jan. 29, 2015                                   __/s/ Freda L Wolfson_____
                                                        Hon. Freda L. Wolfson, U.S.D.J.a