**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANICE MARRIN, | Civil Action No. 14-2558 (FLW)(LHG) |
| Plaintiff, | **OPINION** |
| v. | |
| CAPITAL HEALTH SYSTEMS, INC., JOAN DUVALL, and CAROLANN BASS, | |
| Defendants. | |

**WOLFSON, United States District Judge**:

Before the Court is the motion of Defendants Capital Health Systems, Inc., Joan DuVall, and Carolann Bass ("Defendants") for an award of attorneys' fees and costs as the prevailing party on the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et. seq.* ("CEPA") claim raised in Count I of Plaintiff Janice Marrin's Third Amended Complaint. Defendants contend that they are entitled, under N.J.S.A. 34:19-6, to an award of fees and costs for efforts expended to oppose Plaintiff's CEPA claim over the period of approximately three years from the filing of Plaintiff's Original Complaint in March 2014 to Plaintiff's voluntary withdrawal of her CEPA claim in response to Defendants' motion for summary judgment in November 2017. For the reasons that follow, Defendants' motion is granted in part and denied in part; Defendant is entitled to an award of attorneys' fees and costs incurred in opposing Plaintiff's CEPA claim after the close of discovery on September 1, 2016.

I. FACTUAL BACKGROUND

Plaintiff was hired as a laboratory technician in Capital Health's microbiology lab in November 2005. Deposition Transcript of Janice Marrin ("Marrin Dep."), at 35:8-18. During the

1

course of her employment, she periodically complained to her supervisor, Carolann Bass, that her coworkers failed to follow proper lab "protocol." *See, e.g.*, Marrin Dep. 177:4–178:6, 382:19-383:8, 388:6-390:15, 394:8-395:18. In mid-February 2013, Plaintiff met with Richard Werner, Director of Human Resources, to complain about, *inter alia*, alleged deficiencies in the procedures being followed in the microbiology lab and the attitudes of her co-workers. Marrin Dep. 162:10-24, 175:21-177:3, 185:19-187:18. In April 2013, Capital Health terminated Plaintiff's employment for failure to cooperate with an internal investigation. The internal investigation related to how Plaintiff came into possession of confidential emails between her supervisors and Capital Health's human resources department relating to, but not addressed to, Plaintiff. *See, e.g.*, Disciplinary Action Notice dated 4/4/2013, Ex. 5 to Mem. of Law in Support of Defs.' Mot. for Summ. J., Doc. 71.

On March 20, 2014, Plaintiff filed a 12-count Amended Complaint in New Jersey state court. She alleged, *inter alia*, that Capital Health, Ms. Bass, and another former supervisor, Joan DuVall, had tortiously interfered with her contractual relations and economic advantage, made negligent misrepresentations to her by failing to advise her of the Hospital's call-out procedure, and conspired to commit an unlawful act – namely, terminating her employment. Am. Compl., Ex. B to Notice of Removal, Doc. 1. Plaintiff also asserted a claim under CEPA (Count I), alleging that she reasonably believed: "improper laboratory operations was [sic] conduct that was violating the law or that it was incompatible with a clear mandate of public policy regarding public health, safety or welfare." First Am. Compl., First Count, ¶ 8.

Plaintiff amended her complaint again on May 18, 2014. Plaintiff's CEPA claim remained as Count I in the Second Amended Complaint. On June 2, 2014, Defendants moved to dismiss Counts 3-4 and 6-12. Doc. 9. Defendants did not move to dismiss Plaintiff's CEPA

2

claim. On January 29, 2015, the Court filed an opinion and order granting Defendants' Motion in part. The Court dismissed eight of Plaintiff's twelve claims (Counts 3-4 and 7-12) and granted Plaintiff's cross-motion to amend her New Jersey Law Against Discrimination ("NJ LAD") claim. Docs. 19-20, 22. On February 6, 2015, Plaintiff filed her Third Amended Complaint. Doc. 22. At that point, her remaining claims consisted of the CEPA claim (Count 1), a Family Medical Leave Act ("FMLA") claim (Count 2), and two New Jersey LAD claims (Counts 5-6). *Id.*

On August 20 and August 27, 2015, Defendants deposed Plaintiff. During the course of her deposition, she recounted the complaints she had made to her supervisor and to Human Resources concerning "improper laboratory operations" by her coworkers. *See, e.g.*, Marrin Dep. 177:4–178:6, 382:19-383:8, 388:6-390:15, 394:8-395:18. When asked which law, rule, regulation, or public policy she believed Defendants were violating through these allegedly improper laboratory practices, Plaintiff stated that she did not know which specific law or regulation had been violated. The relevant exchange upon which Defendants rely for the purposes of the present motion is as follows.

> Q. . . . And what laws were you concerned were being broken specifically with these lab tech issues?
>
> A.   I bel - I don't - I don't know what the laws are. I just know the report, there were significant, serious mistakes being reported out and patient's [sic] health were compromised. . . . Or in jeopardy.
>
> Q. . . . Is there a regulation that was being broken or – nor not complied with?
>
> A.   I believe there is. There was. There –
>
> Q.   What regulations?
>
> A.   Well, isn't there some kind of regulation that reports that you report out the proper organism and sensitivity on a patient and not hold it up three days because you're unsure and you keep repeating and – I don't know the specific – I don't know the specific laws.

3

> Q. Okay. Or regulations?
>
> A. Or regulations. I just know that a patient has a right to an expedient and precise report from a microbiology lab that's accredited and licensed in the State of New Jersey.
>
> Q. . . . And how do you know that?
>
> A. It's common sense.

Marrin Dep. 177:4-178:6.

Discovery closed on September 1, 2016. Fifth Am. Pretrial Scheduling Order, Doc. 65. On October 10, 2016, Defendants moved for summary judgment on Plaintiff's remaining claims, including her CEPA claim. Docs. 68-69. Defendants cited Plaintiff's own deposition testimony regarding her "complaints," arguing that they did not rise to the level of complaints about the violation of any law, rule, regulation, or public policy – a prerequisite to liability under CEPA. Doc. 69 at 33-36. Defendants also argued that a plaintiff cannot assert both a CEPA claim and a LAD claim based on the same set of facts, so either Plaintiff's LAD claims or her CEPA claim must fail. *Id.* at 18. On November 7, 2016, in response to Defendants' motion for summary judgment, Plaintiff withdrew her CEPA claim. Doc. 76-1 at 44.

On December 23, 2016, Defendants filed the present motion for attorneys' fees and costs as a prevailing employer on Plaintiff's CEPA claim, pursuant to N.J.S.A. 34:19-6. In their motion, Defendants argue, in the alternative, that Plaintiff proceeded on her CEPA claim without basis in law or fact at at least two points in time. First, Defendants argue in a conclusory manner, that Plaintiff "must have known when she filed her complaint in 2014 that she did *not* hold the belief that the 'improper laboratory operations' she referenced violated any particular law, rule, regulation or public policy." Mot. Br., 9 (emphasis in original). Defendants presumably base this assertion on Plaintiff's subsequent deposition testimony. Second, Defendants argue that Plaintiff

4

should have known once her testimony was elicited during her deposition, that her CEPA claim lacked a basis in law or fact, and yet failed to withdraw her CEPA claim. *Ibid.*

II. STANDARD OF REVIEW

"New Jersey has a strong policy disfavoring shifting of attorneys' fees." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 *N.J.* 561, 569, 730 *A.*2d 843 (1999). New Jersey law allows for the recovery of such fees only "if they are expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co. v. Collier*, 167 N.J. 427, 440, 771 A.2d 1194, 1201 (2001). "CEPA permits an award of 'reasonable attorneys' fees and court costs' to a prevailing employer 'if the court determines that an action brought by an employee under th[e] act was without basis in law or in fact.'" *Noren v. Heartland Payment Sys., Inc.*, 448 N.J. Super. 486, 497, 154 A.3d 178, 185–86 (App. Div.), *reconsideration denied*, 449 N.J. Super. 193, 156 A.3d 188 (App. Div. 2017) (quoting N.J.S.A. 34:19–6). This provision applies only to "a narrow band of cases" in which "the employer must be vindicated and the employee must have proceeded without basis in law or in fact. . . ." *Best v. C&M Door Controls, Inc.*, 200 *N.J.* 348, 358, 981 *A.*2d 1267 (2009). The appellate courts of New Jersey have held that this standard is similar to the standard for filing a frivolous claim under N.J.S.A. 2A:15-59.1. "That statute states that in order for costs to be awarded to the prevailing party because of a frivolous claim, a showing should be made that the nonprevailing party either brought the claim in bad faith for harassment, delay, or malicious injury; or knew, or should have known that the complaint [or] counterclaim . . . was without basis in law or equity . . . ." *Buccinna v. Micheletti*, 311 N.J. Super. 557, 562–63, 710 A.2d 1019, 1021–22 (App. Div. 1998) (quotation omitted). "Moreover, because the fee-shifting provision is in derogation of common law, it is strictly construed." *Noren*, 448 N.J.

5

Super. at 498 (citing *Buccinna*, 311 N.J. Super. at 566 (citing *Hirsch v. Tushill, Ltd.*, 110 N.J. 644, 647, 542 A.2d 897 (1988))).

CEPA's fee shifting section also includes a safe harbor provision, providing in relevant part that

> [a] court, . . . may . . . order that reasonable attorneys' fees and court costs be awarded to an employer if the court determines that an action brought by an employee under this act was without basis in law or in fact. However, an employee shall not be assessed attorneys' fees under this section if, after exercising reasonable and diligent efforts after filing a suit, the employee files a voluntary dismissal concerning the employer, within a reasonable time after determining that the employer would not be found to be liable for damages.

N.J.S.A. 34:19-6. Applying these standards, the Court first evaluates Defendants' entitlement to fees under N.J.S.A. 34:19-6, and, finding such an award merited in this case, then determines the appropriate scope of the fees to be awarded.

III. ANALYSIS

    A. Entitlement to Fees

Although the Third Amended Complaint itself does not state under which specific provision of CEPA Plaintiff intended to proceed, in her Opposition to the present motion, Plaintiff clarifies that her CEPA claim was intended to be brought under *N.J.S.A.* 34:19–3(c). That provision specifically applies to employees in the health care field and bars retaliation against an employee who:

> (c) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law ... or, if the employee is a licensed or certified health care professional, constitutes improper quality of patient care . . . [or]
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

*N.J.S.A.* 34:19–3(c)(1), (c)(3). *See Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 29 (2014).

As the New Jersey Supreme Court has explained, "Plaintiff's CEPA claims—h[er] 'improper quality of patient care' claim under *N.J.S.A.* 34:19–3 . . . (c)(1) and h[er] 'clear mandate of public policy concerning the public health' claim under *N.J.S.A.* 34:19–3(c)(3)— require proof of four elements." *Ibid*.

> First, plaintiff was required to demonstrate that [s]he reasonably believed that [defendant] either provided an improper quality of patient care as defined in *N.J.S.A.* 34:19–2(f), or acted in a manner incompatible with a clear mandate of public policy. . . . Second, plaintiff had the burden to prove that he engaged in protected "whistle-blowing" activity as defined in *N.J.S.A.* 34:19–3(a) or 3(c). . . .Third, plaintiff had the burden of proving that an "adverse employment action was taken against him." . . . Fourth, plaintiff had the burden to demonstrate a causal connection between his whistle-blowing activity and his termination.

*Ibid*. "CEPA defines 'improper quality of patient care' as 'any practice, procedure, action or failure to act of an employer that is a health care provider which violates any law or any rule, regulation or declaratory ruling adopted pursuant to law, or any professional code of ethics.'" *Hitesman*, 218 N.J. at 29 (quoting *N.J.S.A.* 34:19–2(f)). "Whether a CEPA plaintiff invokes a law, rule, regulation, declaratory ruling, or professional code of ethics as a benchmark for "improper quality of patient care" under *N.J.S.A.* 34:19–3(a)(1) or (c)(1), or alleges employer conduct "incompatible with a clear mandate of public policy concerning the public health" under *N.J.S.A.* 34:19–3(c)(3), the plaintiff must identify the authority that provides a standard against which the conduct of the defendant may be measured." *Hitesman*, 218 N.J. at 32-33.

Defendants argue that by admitting during her deposition that she was aware of no specific law or regulation that was violated as a result of the breaches of "laboratory protocol" allegedly committed by Defendants' employees, Plaintiff conceded that she could not meet her burden under N.J.S.A. 34:19-3(c) "to identify the authority that provides a standard against which the conduct of the defendant may be measured." Defendants argue that this failure of

7

proof rendered Plaintiff's CEPA claim without basis in law or fact, at the filing of the Original Complaint, or, at the very latest, in August 2015 after Plaintiff's deposition.

Here, in order to proceed with her CEPA claim, Plaintiff was plainly required under New Jersey law to identify the specific laws or regulations that she believed the breaches of laboratory protocol violated.[1] *Hitesman*, 218 N.J. at 32-33. The New Jersey Supreme Court has explained the central importance of this requirement to the purpose of CEPA itself. "CEPA is not intended to protect an employee who simply disagrees with the manner in which the hospital is operating one of its medical departments, provided the operation is in accordance with lawful and ethical mandates. Thus, a claim under *N.J.S.A.* 34:19–3(a)(1) or (c)(1) cannot proceed unless the plaintiff demonstrates a reasonable belief that the defendant's patient care is 'improper,' measured against an authority recognized by CEPA. Therefore, to assert a CEPA claim based on the 'improper quality of patient care,' the plaintiff must identify a law, rule, regulation, declaratory ruling adopted pursuant to law or professional code of ethics that applies to and governs the employer in its delivery of patient care." *Id.* at 33.

It is equally clear from Plaintiff's deposition testimony, that Plaintiff could not identify a legal basis underpinning her belief that Defendants had violated a law or regulation recognized by CEPA.[2] *See* Marrin Dep. 177:7-8 ("I don't know what the laws are."); 177:23 ("I don't know

---

[1] In Opposition, Plaintiff argues that "N.J.S.A. 34:19-3(c)(1) allows a licensed or certified health care professional to file a CEPA claim without identifying a violation of law or regulation if the violations constitute[] improper quality of care." Opp. 4. This is simply not a correct statement of the law after *Hitesman*.

[2] In Opposition, Plaintiff argues that "[t]he Plaintiff's testimony was that she did know the specific laws that were being broken." Opp. 5. Plaintiff's deposition testimony simply does not support this position. Even assuming that Plaintiff's statement in briefing is the result of an egregious typographical error, as seems likely given that the heading for the relevant section of Plaintiff's arguments is "PLAINTIFF BELIEVED THAT A LAW, RULE, OR REGULATION WAS BEING BROKEN BUT JUST DID NOT KNOW WHAT THEY WERE," such a belief does not alter the fact that Plaintiff, after consulting with legal counsel concerning the nature of a

any specific laws."). Moreover, in opposition to the present motion, Plaintiff fails to identify any such authority, and the Court itself has not identified any. As the New Jersey Supreme Court has explained, in the absence of specific facts concerning the allegedly violated statutes or regulations, there is nothing to "distinguish an employee's objection to, or reporting of, an employer's illegal or unethical conduct from a routine dispute in the workplace regarding the relative merits of internal policies and procedures." *Hitesman*, 218 N.J. at 31. The factual basis that Plaintiff should have had before bringing a CEPA claim was laid out by the Supreme Court in the seminal case of *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405 (1994). *Dzwonar v. McDevitt*, 177 N.J. 451, 464–65 (2003) (holding up *Abbamont* as an archetypal example of a factually supported CEPA claim).

In *Abbamont*, the plaintiff, a metal shop teacher, established the existence of CEPA-covered regulations, as required under N.J.S.A. 34:19-3(c)(3), by referencing a safety guide distributed by his employer. The guide included Title 6 of the 1977 New Jersey Administrative Code ("Vocational Education Safety Standard"), the 1982 amendment to Title 6, and the "National Standard School Shop Safety Inspection Check List." "The guide also included an administrative regulation that specifically requires 'dependable ventilation' that provides 'a minimum amount of outdoor air supply and exhaust on movement' for different types of industrial arts, including metal work." *Abbamont*, 138 N.J. at 424 (quoting *N.J.A.C.* 6:22–5.2). "It was accompanied by a cover memorandum written by [defendant] that explained the guide, instructed the industrial arts teachers to read the materials, and informed them that the [defendant] was adopting the safety guide as 'our official safety guide.'" *Ibid*. "The regulations

---

CEPA claim and engaging in discovery, *should have known* that the Complaint was without basis in law or fact.

9

thus directly and specifically addressed matters of health and safety and fully reflected a mandate of public policy relating to general concerns of health, safety and environmental protection." *Ibid*.

Here, by contrast, despite the attestation in the record of numerous laboratory policies, procedures, and employee manuals, Plaintiff has not contended that any made her aware of applicable laws or regulations which Defendants' employees may have been violating by failing to follow laboratory "protocol." Rather, Plaintiff testified in her deposition that she was not in fact aware, as late as the date of her deposition in August 2015, of any specific law or regulation that Defendants might have broken. Accordingly, this is not a case where there is some doubt as to "a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." *Dzwonar*, 177 N.J. at 464. Instead, Plaintiff has admitted that she did not believe that Defendants' conduct violated a particular law or policy recognized by CEPA, but merely disagreed with the implementation of laboratory protocol by Defendants' employees, and assumed that there must have been a regulatory or legal violation. Marrin Dep. 177:18-19 ("Well, isn't there some kind of regulation that . . ."); 178:1-6 (A: . . . "I just know that a patient has a right to an expedient and precise report from a microbiology lab . . ." Q: . . . "How do you know that?" A: "It's common sense."). In short, Plaintiff's deposition testimony does not fail to show a factual basis for her CEPA claim; it actively shows the absence of such basis, militating in favor of an award of fees to Defendants in this case.

In reaching my decision, I am mindful of the distinction that New Jersey courts have drawn between CEPA claims that merely are "not viable" and those that are "without basis in law or fact. "There is a broad spectrum in the quality of proofs that fall between a claim that is not 'viable' and one that is 'without basis in law or in fact.'" *Noren*, 448 N.J. Super. at 498. "A

10

claim is not viable if it fails to satisfy all the requisite elements of proof. To lack any basis in law or in fact, there must be either no legal authority to support the claim or the absence of a factual basis for the claim." *Ibid.* "The applicable standard is similar to that for *Rule* 1:4–8, which authorizes a sanction for an assertion made in a paper filed with the court when no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." *Id.* (quotation omitted). Here, Plaintiff's CEPA claim is not merely "not viable," due of an insufficiency of proof of the requisite elements, Plaintiff's admissions during her deposition actually negate the factual basis of her claim. In short, her CEPA claim was "completely untenable" once it became clear that it was based upon Plaintiff's disagreement with office practices assumed to be illegal, rather than her belief that laws recognized under CEPA had been violated. The Court therefore finds that Plaintiff's deposition testimony demonstrates that her CEPA claim lacked a basis in law or fact, and Defendants are entitled to an award of attorneys' fees under N.J.S.A. 34:19-6.

    B.  Scope of Fees

The Court having found that Plaintiff's CEPA claim lacked a basis in law or fact after Plaintiff's admission in her August 2015 deposition, and that Defendants are therefore entitled to an award of attorneys' fees, the only remaining question before the Court is the extent of the fees to be granted. The award of attorneys' fees, under CEPA's employer provision is discretionary. *Best v. C & M Doors Controls, Inc.,* 402 N.J. Super. 229, 246, 953 A.2d 775 (App. Div. 2008), *aff'd in part and rev'd in part,* 200 N.J. 348, 981 A.2d 1267 (2009). Defendants, as "[t]he party seeking attorney's fees ha[ve] the burden to prove that [their] request . . . is reasonable." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990).

11

Defendants argue, relying heavily upon *Robles v. U.S. Envtl. Universal Servs., Inc.*, that they are entitled to fees spanning the length of the litigation, or at least from the date of Plaintiff's deposition. 09-CV-2377 SDW, 2011 WL 4729821, at *1 (D.N.J. Oct. 5, 2011), *order clarified*, 09-CV-2377 SDW, 2012 WL 1033040 (D.N.J. Mar. 26, 2012); *see* Mot. Br. at 11. In *Robles*, another court in this district awarded an employer attorneys' fees under CEPA, where, among other factors, one of the plaintiffs testified that there was no factual basis to his claim — specifically that he had no basis to believe that the defendant was aware of the plaintiff's engagement in whistleblowing activity.[3] *Id.* at *2. The *Robles* court went on however, to limit the fees awarded, first analogizing to the standard for Section 1988 fee-shifting enunciated by the Supreme Court in *Hensley*[4] to reduce the requested fee award by two-thirds, and then exempting from joint and several liability for the fees, among others, two of the plaintiffs whose CEPA claims were without basis in fact, pursuant to CEPA's safe harbor provision, because those plaintiffs had withdrawn their claims after the close of discovery but before adjudication on the merits. *Robles v. U.S. Envtl. Universal Servs., Inc.*, No. 09-CV-2377 SDW, 2012 WL 1033040, at *1-*3 (D.N.J. Mar. 26, 2012).

Here, as in *Robles*, equitable considerations warrant the limitation of Defendants' requested fees and costs. Firstly, the Court finds Defendants' unsupported contention that

---

[3] Defendants also rely, almost exclusively on *Robles* for their argument that they are entitled to fees. Plaintiff argues that Robles is distinguishable on a number of factual grounds. The Court need not rely upon or interpret Robles on the issue of entitlement to fees because, as discussed, *supra*, New Jersey law as developed by the state courts clearly supports an award of fees in this case.

[4] *See Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983) (in exercising discretion to award fees "the most critical factor is the degree of success obtained. . . . There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.").

Plaintiff's August 2015 admissions during her deposition indicate that she lacked a basis for her CEPA claim at the time of the filing of her Complaint to be highly speculative. At her deposition, Plaintiff admitted that at the present time she was unaware of any specific statute Defendants' conduct would have violated. The Court will not, on such a limited factual record, infer that Plaintiff never had such a basis. Furthermore, in that connection, Plaintiff's stated reason for withdrawing her CEPA claim in response to Defendant's motion for summary judgment was that Plaintiff's NJLAD retaliation claim was *stronger*, not because the CEPA claim lacked merit. Defendants had argued in their motion both that the CEPA claim failed on the merits and that the CEPA and NJLAD retaliation claims were mutually exclusive, due to CEPA's provision waiving certain other theories of recovery. *See Ehling v. Monmouth–Ocean Hosp. Serv. Corp.,* 961 F.Supp.2d 659, 672 (D.N.J.2013) (although not every NJLAD claim is waived by the assertion of a CEPA claim, "retaliation claims under the LAD necessarily fall within the CEPA waiver provision."). At the time of filing her Complaint, however, Plaintiff was entitled to plead alternative claims, including CEPA and NJLAD retaliation. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Courts in this district have persuasively held that, given Rule 8's pleading standard, plaintiffs are not required to choose between their CEPA and NJLAD retaliation claims until *after* the close of discovery. *Rossi v. Vericare Mgmt., Inc.*, No. CV136884FLWDEA, 2016 WL 6892075, at *4 (D.N.J. Nov. 22, 2016) (predicting that "the New Jersey Supreme Court would hold that the CEPA waiver provision does not require a

plaintiff to elect his remedies until after the completion of discovery.") (collecting cases).[5] Plaintiff was not, therefore, obligated to withdraw, at the pleading stage, her CEPA claim merely due to her inability ultimately to proceed on both CEPA and NJLAD retaliation claims after the close of discovery. Indeed, Defendants did not move to dismiss Plaintiff's CEPA claim on the pleadings, perhaps for this very reason.

Secondly, accepting that Plaintiff was or should have been aware that her CEPA claim lacked a basis in law or fact as of her deposition, the Court rejects Defendants' arguments that her failure to timely withdraw her claim prejudiced Defendants in the discovery process. *See* Mot. Br. at 5 ("shortly after her deposition testimony, Defendants produced hundreds of pages of documents . . . which showed that no material errors or improper procedures that directly affected patient safety had occurred."); 10 ("Rather than withdrawing her claim, however, Plaintiff pushed forward in pursuit of it, noticing seven depositions (taking only five), and forcing Defendants to spend considerable time and resources producing documents that demonstrated the microbiology lab was in compliance with state and federal standards at all relevant times."). Despite alleged burdens during discovery, Defendants have not brought to the Court's attention any attempt by Defendants to alert Plaintiff to the significance of her

---

[5] *See also Broad v. Home Depot U.S.A., Inc.*, 16 F. Supp. 3d 413, 418 (D.N.J. 2014) ("Plaintiff may ultimately be forced to elect his remedy, if indeed discovery confirms, as Defendants have argued, that Plaintiff's NJLAD retaliation claim and his common law claims are duplicative of the CEPA claim. . . . [H]owever, this Court predicts that New Jersey's Supreme Court would hold that the CEPA waiver provision does not require a plaintiff to make this choice at the pleading stage. Rather, the applicable caselaw indicates that enforcement of the CEPA waiver would be deferred until the plaintiff has had an opportunity to conduct discovery."); *Rubin v. Sultan Healthcare, Inc.*, No. CIV. A. 08-6175 SRC, 2009 WL 1372272, at *4 (D.N.J. May 15, 2009) (holding "that Plaintiff has not waived her [other] claim by merely filing a Complaint which pleads for relief under the alternative CEPA theory . . . [because] [t]his Court predicts that New Jersey's Supreme Court would hold that the CEPA waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to conduct discovery.").

admissions to her CEPA claim, nor did Defendants file an early motion for summary judgment or to dismiss Plaintiff's CEPA claim immediately after her deposition. Moreover, in their motion for summary judgment, Defendants convincingly argued that Plaintiff's CEPA and NJLAD claims shared the same factual basis. Dkt. No. 69, p. 18.

Accordingly, although Defendants' present motion complains about additional burdens in the production of documents and the questioning of witnesses in depositions, by Defendants' own account, such discovery relevant to CEPA was relevant to the facts underlying Plaintiff's NJLAD retaliation claim as well. Disentangling which attorney hours were devoted to each claim, when both shared the same basis would be nearly impossible. Furthermore, Plaintiff was entitled at the pleading stage to maintain both her maintain both her CEPA and NJLAD retaliation claims, and Defendants chose to wait until after the close of discovery to move on all of Plaintiff's claims, rather than moving on the CEPA claim as soon as Defendants contend it became apparent that the claim lacked merit. This Court, considering the forgoing and looking to the parameters of CEPA's safe harbor provision delineated in *Robles*, finds that an appropriate threshold for the imposition of fees and costs in this case was the close of discovery. After that point, the record was complete, there was no possibility that additional facts would provide a basis for Plaintiff's CEPA claim, and Plaintiff was no longer entitled to maintain mutually exclusive CEPA and NJLAD claims.

In her opposition to the present motion and in her response to Defendants' prior motion for summary judgment, Plaintiff readily admits that Defendants' legal arguments on summary judgment influenced Plaintiff to abandon her CEPA claim in favor of her NJ LAD claim. Opp. at 1 ("It was not until after summary judgment was filed that the employee realized that she had a stronger LAD case than a CEPA claim. . . . Plaintiff elected to pursue the LAD claim since this

15

was the strongest claim."). Defendants' summary judgment motion however did not add to or alter the factual record in the case relevant to Plaintiff's CEPA claim, so any epiphany Plaintiff experienced as a result of Defendants' legal arguments was one that Plaintiff should have had, and, indeed, to qualify under CEPA's safe harbor provision, was required to have had by the close of discovery at the latest. N.J.S.A. 34:19-6 (CEPA claim must be withdrawn "within a reasonable time after determining that the employer would not be found to be liable for damages"). The failure of Plaintiff's counsel to appreciate the legal significance of the facts in the record is not an excuse. Accordingly, the Court, exercising its discretion, finds that Defendants are entitled to attorneys' fees and costs incurred in defending against Plaintiff's CEPA claim after the close of discovery. Defendants shall submit affidavits delineating such fees in conjunction with any additional filings ordered after this Court's disposition of Defendants' motion for attorneys' fees and costs as the prevailing party on the remainder of Plaintiff's Third Amended Complaint.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for attorneys' fees and costs is granted in part and denied in part; Defendants are awarded fees incurred in opposing Plaintiff's CEPA claim after September 1, 2016, in an amount to be determined following the submission of affidavits regarding the fees incurred, consistent with the dictates of this Opinion.

Dated:      7/20/2017                                          /s/ Freda L. Wolfson
                                                        The Honorable Freda L. Wolfson
                                                        United States District Judge