**\*\*NOT FOR PUBLICATION\*\***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANICE MARRIN, | Civil Action No. 14-2558 (FLW)(LHG) |
| Plaintiff, | **OPINION** |
| v. | |
| CAPITAL HEALTH SYSTEMS, INC., JOAN DUVALL, and CAROLANN BASS, | |
| Defendants. | |

**WOLFSON, United States District Judge**:

Before the Court is the motion of Defendants Capital Health Systems, Inc., Joan DuVall, and Carolann Bass ("Defendants") for an award of attorneys' fees and costs as the prevailing party in this case brought by Plaintiff Janice Marrin ("Plaintiff"). After prevailing at the summary judgment stage, Defendants seek fees and costs from Plaintiff and her counsel, Michael Harwin, Esq. ("Harwin"),[1] pursuant to the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-12, as well as this Court's inherent authority. Defendants also move for fees as a sanction against Harwin under 28 U.S.C. § 1927. For the reasons below, I deny Defendants' motion.

**I. FACTUAL BACKGROUND**[2]

---

[1] On August 8, 2017 the Court entered an order relieving Harwin as Plaintiff's counsel after Plaintiff terminated Harwin's representation. On January 3, 2018, the Court issued an Order stating that it would consider Plaintiff as proceeding *pro se* and directed Plaintiff to file any opposition to Defendants' motion for attorneys' fees and costs. Although only Harwin filed an opposition brief, the following analysis applies to Defendants' fee request as to both Plaintiff and Harwin, except for Defendants' sanctions motion under 28 U.S.C. § 1927, a statute that applies only to counsel's liability for excessive costs.

[2] These facts are taken from the Court's May 31, 2017 Summary Judgment Opinion.

1

Plaintiff was hired as a laboratory technician in Capital Health's microbiology lab in November 2005. *See* Opinion at 2, May 31, 2017, ECF No. 101 ("MSJ Opinion"). During the course of her employment, she periodically complained to her supervisor, Carolann Bass, that her coworkers failed to follow proper lab protocol. *Id.* at 3. In mid-February 2013, Plaintiff met with Richard Werner, Director of Human Resources, to complain about, *inter alia*, alleged deficiencies in the procedures being followed in the microbiology lab and the attitudes of her co-workers. *Id.* at 6. In April 2013, Capital Health terminated Plaintiff's employment for failure to cooperate with an internal investigation. *Id.* at 13. The internal investigation related to how Plaintiff came into possession of confidential emails between her supervisors and Capital Health's human resources department relating to, but not addressed to, Plaintiff. *Id.*

This case was initially filed in the Superior Court of New Jersey, Law Division, Civil Part, Mercer County, and was removed to this Court on April 22, 2014. Plaintiff filed the twelve-count First Amended Complaint ("FAC") in this action on May 18, 2014. Defendants moved to dismiss nine of the counts in the FAC on June 2, 2014. In an Opinion and Order dated January 29, 2015, the Court granted Defendants' motion as to eight counts and granted Plaintiff leave to amend as to one count. On February 6, 2015, Plaintiff filed a Second Amended Complaint ("SAC") conforming the pleadings to the Court's Opinion. The SAC contained the following causes of action: 1) a claim under the Conscientious Employee Protection Act ("CEPA"); 2) a claim under the Family Medical Leave Act ("FMLA") under both interference and retaliation theories; 3) a claim under the NJLAD under a retaliation theory, and 4) an NJLAD claim under a discrimination theory for failure to accommodate. On November 7, 2016, in response to Defendants' motion for summary judgment, Plaintiff withdrew her CEPA claim. On May 31, 2017, the Court granted Defendants' summary judgment motion, dismissing all claims, and on

July 20, 2017, the Court granted Defendants' motion for attorneys fees and costs as to Plaintiff's CEPA claim, pursuant to N.J.S.A. 34:19-6.[3]

## III. ANALYSIS

Having prevailed at the summary judgment stage on all counts, Defendants request an award of attorneys fees and costs with respect to: 1) Plaintiff's two NJLAD claims (Counts V and VI) under the NJLAD's fee-shifting provision, N.J.S.A. 10:5-126; 2) Plaintiff's FMLA claim through the Court's inherent authority to award fees and costs; and 3) a variety of allegedly improper acts by Harwin through a motion for sanctions pursuant to 28 U.S.C. § 1927.

### A. NJLAD

"New Jersey has a strong policy disfavoring shifting of attorneys' fees." *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561, 569 (1999). New Jersey law allows for the recovery of such fees only "if they are expressly provided for by statute, court rule, or contract." *Packard-Bamberger & Co. v. Collier*, 167 N.J. 427, 440 (2001). "Under the NJLAD, "the prevailing party may be awarded a reasonable attorney's fee[s] as part of the cost." *Boles v. Wal–Mart Stores, Inc.*, 650 Fed.Appx. 125, 129 (3d Cir. 2016) (citing N.J.S.A. § 10:5–27.1). The

---

[3] Although the Court awarded fees and costs to Defendants on Plaintiff's CEPA claim, that analysis does not apply here. As an initial matter, the standard for awarding fees is more lenient under CEPA than under any of the claims through which Defendants now seek fees; indeed, these statutes all require a finding of bad faith. CEPA, in contrast, only requires that a non-prevailing party "should have known that the complaint [or] counterclaim ... was without basis in law or equity...." *Buccinna v. Micheletti*, 311 N.J. Super. 557, 562–63 (App. Div. 1998) (quotation omitted). Moreover, CEPA bars retaliation against an employee who reasonably believes that her employer engaged in activity, practice, or policy that violates the law, a requirement that the New Jersey Supreme Court has identified as of central importance to bringing a CEPA claim. *See Hitesman v. Bridgeway, Inc.*, 218 N.J. 8, 32-33 (2014) (citing N.J.S.A. 34:19-3(c)(1), (c)(3)). Plaintiff testified in her deposition that she knew of no law that Defendants had violated, thus meriting an award of fees under the CEPA standard, whereas, as explained *infra*, Plaintiff's other claims were not so patently frivolous as to entitle Defendants to fees under a bad faith standard.

3

standard for awarding fees to defendants is stricter than for prevailing plaintiffs, *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 750 (3d Cir. 1997) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)), and "no attorney's fees shall be awarded unless there is a determination that the charge was brought in bad faith." N.J.S.A. 10:5–27.1. There is some disagreement on the meaning of "bad faith." In *Veneziano v. Long Island Pipe Fabrication & Supply Corp.*, a court in this district held that "bad faith," in the NJLAD fee-shifting context, "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will." 238 F. Supp. 2d 683, 692 (D.N.J. 2002), *aff'd sub nom.* 79 F. App'x 506 (3d Cir. 2003). On the other hand, Defendants ask the Court to apply the definition of bad faith that the New Jersey Appellate Division adopted in *Michael v. Robert Wood Johnson Univ. Hosp.*, 398 N.J. Super. 159 (App. Div. 2008). There, after examining the *Veneziano* decision, the Appellate Division opted not to require willful bad faith, but rather equated bad faith with "a reckless disregard or purposeful obliviousness of the known facts."[4] *Id.* at 164.

I need not wade into the question of the proper definition of bad faith under the NJLAD because I am unpersuaded that Defendants should be awarded fees and costs even under Defendants' proposed standard. To set forth a *prima facie* case of retaliation under the NJLAD "the employee must demonstrate (1) that she engaged in a protected activity that was known to the employer, (2) that she was subjected to an adverse employment decision, and (3) that there is

---

[4] Because this is not a Supreme Court decision, I am not bound by the appellate court's interpretation of state law. *See Bracco Diagnostics, Inc. v. XL Select Ins. Co.*, No. 06-1066, 2008 WL 1766625, at *2 (D.N.J. Apr. 14, 2008).

4

a causal link between the activity and the adverse action." *LaPaz v. Barnabas Health Sys.*, 634 Fed.Appx. 367, 369 (3d Cir. 2015) (citing *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 545 (2013)). A plaintiff can make out an NJLAD retaliatory discharge claim through either circumstantial or direct evidence. The New Jersey courts have imported the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to adjudicate NJLAD claims based upon circumstantial evidence. *See Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 300 (3d Cir. 2004) ("Under this analysis a plaintiff first must establish a *prima facie* case .... If the plaintiff does so the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. Then, if the defendant meets this rather light burden, the plaintiff must discredit the defendant's proffered reason for its action or adduce evidence that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.") (quotations omitted). For claims based on direct evidence, the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989) applies. *See Bertolotti v. AutoZone, Inc.*, 132 F. Supp. 3d 590, 598 (D.N.J. 2015) (quoting *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 208 (N.J. 1999)). "In the context of a claim for wrongful discharge, an employee must show direct evidence that decisionmakers placed substantial negative reliance on an illegitimate criterion ... in deciding to terminate his or her employment." *Id.* (quotations omitted).

Here, the Court's Summary Judgment Opinion made clear that Plaintiff did not bring the NJLAD retaliatory discharge claim in bad faith. In that Opinion, I found that Plaintiff had successfully made out a *prima facie* case for discrimination through circumstantial evidence, finding that Plaintiff was terminated shortly after making a complaint about her supervisors, as courts "routinely find periods of such duration to satisfy the standard of unusually suggestive

5

temporal proximity at the prima facie stage." MSJ Opinion at 24-25 (citing, *e.g., Lichtenstein v. UPMC*, 691 F.3d 294, 307 (3d Cir. 2012)). It was only because Defendants showed a legitimate business reason for Plaintiff's termination, and because Plaintiff could not demonstrate pretext—evidence that was not within Plaintiff's control prior to litigation—that Plaintiff's claim failed. Thus, as Plaintiff had a factual basis for this claim, it was not brought in bad faith. *See L.B. Foster Co.*, 123 F.3d at 753 (finding there was "some factual basis" for retaliation claim under Title VII because Plaintiff made out a *prima facie* case).

The same is true for Plaintiff's claim for discrimination through direct evidence, even though for that claim, I found Plaintiff did fail to make a *prima facie* case. Plaintiff argued that Defendants terminated Plaintiff based on Plaintiff taking Defendants' emails, activity that, according to Plaintiff, was protected under the NJLAD. However, the Court only reached its decision that such activity was not protected after undertaking a thorough analysis of the factors set forth in *Quinlan v. Curtiss–Wright Corp.*, 204 N.J. 239 (2010). While the claim ultimately proved meritless under the law, there is no indication that Plaintiff acted with "a reckless disregard or purposeful obliviousness of the known facts" in bringing the claim. *Michael*, 398 N.J. Super. at 165 (quotation omitted). Thus, while the Court disposed of this claim at the summary judgment stage, it amounted to a "a weak argument with little chance of success," and not a "frivolous argument with no chance of success," only the latter of which "permits defendants to recover attorney's fees." *Weisberg v. Riverside Twp. Bd. of Educ.*, No. 01-758, 2005 WL 2000182, at *1 (D.N.J. Aug. 18, 2005), *aff'd*, 272 F. App'x 170 (3d Cir. 2008).

Defendants' arguments fare no better with respect to Count VI—Plaintiff's NJLAD failure to accommodate claim. In order to prevail on a failure to accommodate claim under the NJLAD, a plaintiff must establish four elements: (1) she was disabled and her employer knew it;

(2) she requested an accommodation or assistance; (3) her employer did not make a good faith effort to assist; and (4) she could have been reasonably accommodated. *Armstrong v. Burdette Tomlin Mem. Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317–320 (3d Cir. 1999)). Here, Plaintiff based her failure to accommodate claim on the lab's call out policy, which prohibited calling out through leaving voice messages; rather, according to Plaintiff, the policy required employees to speak to a supervisor or tech-in-charge when calling out sick. Plaintiff argued that there were occasions when no supervisor or tech-in-charge was available, consequently forcing her to appear for work sick. Accordingly, Plaintiff requested some accommodation allowing her to call in sick when no supervisor or tech-in-charge was available.

Although this claim did not survive summary judgment, Defendants have not demonstrated that Plaintiff knew or should have known that the claim would not succeed. At the summary judgment stage, I found that that Defendants did not fail to accommodate Plaintiff, in part, because she had access to the lab director's cell phone number, which was a reasonable accommodation. However, as I explained in denying Defendants' first motion to dismiss this claim, "Defendants assertion that an alternative phone number is not a reasonable accommodation…is a legal conclusion, and requires facts outside the pleadings to establish." Opinion, dated January 29, 2015 at 15, ECF No. 19. Thus, although the claim was ultimately legally insufficient, there is no indication that Plaintiff lacked a sufficient factual basis to bring the claim in the first instance.[5] *See Michael*, 398 N.J. Super. at 166 ("That a claim may turn out

---

[5] Defendants also argue that Plaintiff was never actually denied this accommodation, as Plaintiff only testified as to one incident in which she was ultimately able to speak to a manager, albeit after some delay. However, this does not necessarily undermine the basis for Plaintiff's claim, which was that being forced to speak to a manager at all was improper given her disability.

7

in the end to be groundless is not the necessary equivalent to it having been *commenced* in bad faith.") (emphasis added) (citing *Brown v. Fairleigh Dickinson University,* 560 F.Supp. 391, 406 (D.N.J. 1983)).

In sum, while Plaintiff's NJLAD claims ultimately proved unsuccessful, the Court finds that Plaintiff did not advance those claims for improper motives, as a means to harass Defendants, or as litigation abuse. Rather, to find Plaintiffs' claims frivolous would be to engage in a disfavored 20/20 hindsight evaluation. *See Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978). *See also Green v. Port Auth. of New York & New Jersey*, No. 07-3910, 2010 WL 2989990, at *4 (D.N.J. July 26, 2010) (citing *Heard v. St. Luke's Hosp.*, No. 08-5494, 2010 WL 2569233, at *1 (E.D. Pa. June 21, 2010)) (denying defendant attorney's fees, although "[m]any of the[ ] factors support[ed] the [defendant's] argument for attorney's fees and costs," the record was sufficient to show that the claim was not "wholly without foundation or frivolous")); *Hughes v. City of Bethlehem*, No. 05-5444, 2009 WL 255859, at *2 (E.D. Pa. Feb. 3, 2009) (finding that, despite plaintiff's failure to make out a *prima facie* case for her claims and failure to survive summary judgment, awarding defendants attorney's fees is not appropriate since plaintiff's claims were neither advanced for improper motives, advanced to harass defendants, nor were "frivolous, unreasonable, or without foundation"); *Equal Emp't Opportunity Comm'n v. Grane Healthcare Co.*, No.10-250, 2016 WL 3349344, at *7-8 (W.D. Pa. June 15, 2016), *appeal dismissed sub nom. EEOC v. Grane Health Care* (Aug. 15, 2016), *and appeal dismissed sub nom. EEOC v. Grane Health Care* (Aug. 26, 2016) (denying defendant attorney's fees notwithstanding plaintiff's failure to establish a *prima facie* case or the court's determination that issues in the case were not matters of first impression). Thus, because Plaintiff brought neither NJLAD claim in bad faith, Defendant's

request for fees on both claims is unwarranted.

   B. **FMLA**

Unlike the NJLAD, the FMLA does not expressly authorize fee shifting. *See Fassl v. Our Lady of Perpetual Help Roman Catholic Church*, No. 5-404, 2006 WL 709799 at *5 (E.D. Pa. March 13, 2006) ("The court finds that the plain language FMLA is unambiguous that Congress did not extend to defendants entitlement to attorney's fees pursuant to the FMLA."). Nonetheless, Defendants seek fees and costs for Plaintiff's FMLA claims through the Court's inherent authority to award costs and fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766 (1980); *accord Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). "A court must ... exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) (quoting *Chambers,* 501 U.S. at 50). Thus, "a finding of bad faith is 'usually' required" before inherent-power sanctions are ordered, and generally a court should not resort to such sanctions unless "'the conduct of a party or an attorney is egregious and no other basis for sanctions exists.'" *Id.* (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* 278 F.3d 175, 181 & n. 4 (3d Cir. 2002)).

As with their request for fees under the NJLAD, Defendants have not shown that the actions of Plaintiff or her counsel were sufficiently egregious to award fees under the Court's inherent authority. Plaintiff asserted two FMLA claims: one for "interference"[6] and one for

---

[6] A plaintiff must show that (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

9

retaliation.[7] With respect to the retaliation claim, which is also analyzed under the *McDonnel Douglas* burden-shifting framework, I found at the summary judgment stage that Plaintiff made out a *prima facie* case, making an award of fees inappropriate as to that claim. *See L.B. Foster*, 123 F.3d at 753. For Plaintiff's FMLA interference claim, I found that Plaintiff had never actually been denied benefits, which is a requirement in order to succeed on such a claim. However, Defendants have not shown that "bad faith" rather than a lapse of judgment or misunderstanding of the law caused Plaintiffs to bring this claim. Moreover, Defendants are hard-pressed to now argue that the claim was baseless when they opted not to move for dismissal of this claim at any point prior to the filing of their comprehensive motion for summary judgment in October 2016.

Thus, Defendants are not entitled to fees on the FMLA claims under the Court's inherent authority.

**C. Sanctions**

.       Finally, Defendants seek sanctions against Harwin pursuant to 28 U.S.C. § 1927. In *LaSalle Nat'l Bank v. First Connecticut Holding Group,* 287 F.3d 279 (3d Cir. 2002), the Third Circuit provided a comprehensive overview of the applicability of § 1927, noting that "[t]he statute thus limits attorney sanctions imposed thereunder to those situations where an attorney has: (1) multiplied proceedings; (2) unreasonably and vexatiously; (3) thereby increasing the cost of the proceedings; (4) with bad faith or with intentional misconduct." *Id*. at 288 (*citing In re*

---

*Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017) (quoting *Ross*, 755 F.3d at 191–92
[7] "To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med*. Ctr., 691 F.3d 294, 301–02 (3d Cir. 2012).

*Prudential,* 278 F.3d at 188). "[S]anctions may not be imposed under §1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Id.* at 289 (citations omitted).

Defendants argue that Harwin's behavior over the course of the litigation amounted to sanctionable conduct meriting an award of fees. Their first argument, that Harwin pursued patently meritless claims, is denied for the same reasons as already explained: while pursuing claims like the NJLAD failure to accommodate claim or the FMLA interference claim may have amounted to "misunderstanding" of the law or "bad judgment," it does not amount to *willful bad faith*. *See Moeck v. Pleasant Valley Sch. Dist.*, 844 F.3d 387, 391–92 (3d Cir. 2016) ("Some discrepancies exist between the complaints and Plaintiffs' submissions in opposition to Getz's summary judgment motion, on the one hand, and facts elicited through discovery, on the other, but Plaintiffs' pleadings have a factual basis and are not 'patently unmeritorious or frivolous.'") (citation omitted).

Defendants also argue that Harwin engaged in vexatious conduct by repeatedly delaying the litigation with disorganized filings, including an "incoherent Complaint … without proper page numbers" and the "bizarre concept of punitive damages and fees being pled as actual causes of action." ECF No. 104 at 18. However, while these filings may have lacked clarity, poor written communication skills, and poorly drafted pleadings, are not tantamount to bad faith. Indeed, pleadings alone cannot be the basis for a sanctions award, as "§ 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading." *See Mogavero v. Seterus, Inc.*, No. 15–1314, 2015 WL 7300501, at *2 (D.N.J. Nov. 18, 2015). Defendants also argue that Plaintiff engaged in various discovery tactics designed to deliberately delay the case, including filing unnecessary expert reports and refusing

to cooperate with basic discovery tasks. However, Defendants have not provided case law in which courts have awarded sanctions for similar conduct; nor did Defendants move for discovery sanctions during the pendency of the litigation. At this juncture, I am unpersuaded that counsel's actions, while perhaps aggravating, are sanctionable under § 1927. *See Younes v. 7-Eleven, Inc.*, 312 F.R.D. 692, 698 (D.N.J. 2015) (finding that party's repeated "obfuscation" during discovery, including the filing of "meritless and frivolous" objections did not amount to a finding of "bad faith" due to the "high burden to impose sanctions under § 1927").

Thus, Defendants' request for fees as sanction under § 1927 is denied.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' motion for attorneys' fees and costs pursuant to the NJLAD, the Court's inherent power, and 28 U.S.C. § 1927 is denied.

Dated: March 29, 2019                                /s/ Freda L. Wolfson
                                                     Hon. Freda L. Wolfson
                                                     United States District Judge